## BOOTHBY & A. *v.* PLAISTED.

When spirituous liquors are ordered in New Hampshire of the vendor in New York, or when there is a contract for a sale of liquors made in New Hampshire, but the sale is completed in New York by selecting the liquors, separating them from a larger mass, marking, directing, and delivering them there, the sale is held to be in New York, and, if legal there, an action for the price may be maintained in New Hampshire.

When a sale of goods is made by sample or with warranty, to be delivered in New York, and the goods, when delivered there, are according to the contract of warranty, or like the sample, they become the property of the purchaser upon delivery.

ASSUMPSIT, by James L. Boothby and another against Sidney G. Plaisted, for goods sold and delivered. The specification was a claim of $361 for spirituous liquors, and 75 cents for cartage of the same. The latter item was waived at the trial. The plaintiffs were wholesale liquor dealers in New York, and the defendant was a retail dealer in the same article in Portsmouth. The plaintiffs introduced the deposition of Samuel Boothby, one of the plaintiffs, and the following interrogatories and answers were admitted, against the defendant's objection : 3. Did you, on or about the 14th July, 1870, have any business transaction with Sidney G. Plaisted ? If so, state what. *Answer.* We did have. We sold and delivered to him, at 110 Liberty street, in the city of New York, the following bill of goods : One barrel of Bourbon whiskey, one barrel of old Bourbon, and one quarter pipe of Phœnix gin. 4. Upon what terms and at what prices were the goods sold ? The answer states the prices at which the liquors were sold, and place at which they were to be delivered, as above. 6. Through whom was this sale negotiated ? *Answer.* William H. Hunt. 7. What authority did you give said Hunt in relation to said sale ? *Answer.* We gave him authority to solicit the order for these goods, to be sold and delivered in New York, subject to the approval of our firm.

It appeared that said Hunt was a travelling agent for the plaintiffs ; that on the 8th day of July, 1870, he called on the defendant at his place of business in Portsmouth, with samples of liquor, and solicited him to purchase liquors of the plaintiffs, to be of the same quality as the samples ; and Hunt agreed with the defendant that, after the liquors arrived at his store, he might examine them, and, if not according to sample, he need not accept them.

The defendant gave Hunt an order for the liquors in question, which was forwarded by him to the plaintiffs in New York, and the liquors were shipped by them by boat to Portland, Me., directed to the defendant at Portsmouth, and there received and afterwards used by him ; that the plaintiffs charged 75 cents for cartage in New York, and that

the defendant paid the freight on them from New York to Portsmouth. At the time the order was given, Hunt asked the defendant how he would have the liquors sent. The defendant said it was immaterial; he wanted them to come the cheapest way; that Hunt knew better than he how that was.

It being suggested by the defendant's counsel that there seemed to be no material fact in dispute, the court, on this evidence, ordered a verdict for the plaintiffs for the price of the liquors, which the defendant moved to set aside.

The case was reserved.

*Frink* and *Butler*, for the plaintiffs.

*Hatch* and *Page*, for the defendant.

SARGENT, J.   In all respects save one, this sale of liquors stands upon the same foundation as the numerous cases reported in our State. That exception is the fact that the defendant, " after the liquors arrived at his store, might examine them, and if not according to sample he need not accept the same." But waiving that part of the contract for the present, this case, aside from that, presents the same features of numerous other cases where there was a contract for a sale of liquors made in New Hampshire, but the completed sale (completed by separating the liquors from a larger mass and setting them apart for the defendant, marking and directing them, and then by *delivery* at the place agreed on) was in another State. The charge for cartage is waived by the plaintiff; and the case finds that the defendant paid the freight from New York. *Banchor* v. *Warren*, 33 N. H. 183; *Smith & Lougee*, v. *Smith*, 27 N. H. 244; *Woolsey* v. *Bailey*, 27 N. H. 219; *Gassett* v. *Godfrey*, 26 N. H. 415; *Garland* v. *Lane*, 46 N. H. 248; *Butler* v. *Northumberland*, 50 N. H. 33.

But we cannot see that the additional provision as to acceptance is anything more than the law implies in every contract where a sale is made by sample or with warranty, except that in this case it was agreed that the defendant should decide for himself whether or not the goods were according to the sample; and he certainly cannot be heard to object that he himself was made the umpire, and has by his own acts decided the case in favor of the plaintiffs.

His accepting and using the goods is sufficient proof that they were considered to be according to sample; and if they were according to the sample, then he had no right or power under the contract to refuse to receive them.

What questions might have arisen had the defendant in fact refused to receive them, it is not important here to determine. Here was a contract for a sale and delivery in New York of a certain description of goods as per sample. If the plaintiffs performed their part of the contract fully by delivering at the time and place agreed the article which they agreed to furnish, then it became at once the property of the

defendant, and he would ordinarily have no right to refuse to accept it. Ordinarily it would be a question for the jury to settle, whether the goods delivered were according to contract or like the sample. But in this case the parties agreed that that fact should be referred to the defendant, and he has decided the case in favor of the plaintiff.

The defendant might refuse to accept if the article was not such as the plaintiffs had sold him. He was at liberty to refuse to receive an article which he had not bought or agreed to take. But the article in this case which was sold was delivered and was accepted, and we think the contract binds the defendant from the time the goods were delivered.

A case in point is *Gibson* v. *Stevens*, 8 How. (U. S.) 401, where there was a guarantee that certain goods sold should bear inspection. In that case the price had been paid and a bill of sale of the goods taken, but no delivery of the goods had been made, they were left in the hands of the vendor. TANEY, C. J., in the opinion, says,—"The guarantee that the articles should pass inspection does not affect the character of the transaction, or convert it into an executory contract. It is nothing more than the usual warranty of the soundness and quality of the thing sold, which is taken in every sale of personal property where the purchaser does not choose to take the risk upon himself." 2 Kent's Com. 480 ; 1 Parsons on Con. 593 ; 1 Smith's Lead. Cases 308 ; *Vincent* v. *Germond*, 11 Johns. 283.

As to the questions and answers in the plaintiff's deposition, they are clearly competent as they stand. The witness states the matter as something within his own knowledge, and if so, the facts stated are all competent and proper. But it is urged that it must inferred from the facts stated in the case that the witness did not know the facts contained in the answers except by hearsay. But we think no such inference necessarily follows from the facts stated in the case. Upon this point, however, the case of *Dickinson* v. *Lovell*, 35 N. H. 9, 17, and 18, is in point, and is entirely conclusive.

*Judgment on the verdict.*